UNITED STATES DISTRICT COURT

Northern District of California

Oakland Division

| | |
|---|---|
| WINDERMERE HOLDINGS, LLC., <br><br>    Plaintiff, <br>    v. <br>U.S. WALL DECOR, LLC., *et al.*, <br><br>    Defendants. <br>_____/ | No. C 10-03955 LB <br><br>**ORDER DENYING PLAINTIFF'S APPLICATION FOR TEMPORARY RESTRAINING ORDER AND SETTING BRIEFING SCHEDULE FOR MOTION FOR PRELIMINARY INJUNCTION** <br><br>**[ECF No. 25]** |

## I. INTRODUCTION

On September 2, 2010, Plaintiff filed a Complaint alleging that Defendants had violated various trademark and copyright laws. Complaint, ECF No. 1. Defendants filed an Amended Answer, Counterclaims, and Crossclaims against Thomas Kinkade on December 22, 2010. Amended Answer, ECF No. 18. On January 11, 2011, Plaintiff filed an *Ex Parte* Application for a Temporary Restraining Order and Order to Show Cause Regarding a Preliminary Injunction as well as a First Amended Complaint. Application for TRO, ECF No. 25; First Amended Complaint, ECF No. 32.

In its application for a temporary restraining order, Plaintiff asks the court to enjoin Defendants from (1) using its trademark lamppost design, (2) creating and selling derivative works based on paintings created by Thomas Kinkade, and (3) using its original digital photographs of various Thomas Kinkade paintings on Defendants' websites and in Defendants' advertisements. *Id.* at 6. The court heard oral argument on the matter from all parties on January 11, 2011. Because Plaintiff

1 failed to show that it is likely to succeed on the merits or that it will suffer an immediate irreparable 2 harm, the court **DENIES** Plaintiff's application for a temporary restraining order.

## II.  LEGAL STANDARD

A temporary restraining order preserves the status quo and prevents irreparable harm until a hearing can be held on a preliminary injunction application. *See Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 423, 429 (1974).  A temporary restraining order is an "extraordinary remedy" that the court should award only when a plaintiff makes a clear showing that it is entitled to such relief. *See Winter v. Natural Res. Defense Council, Inc.*, 129 S. Ct. 365, 376 (2008).  The standards for a temporary restraining order mirror that for a preliminary injunction. *See Stuhlbarg Int'l Sales Co., Inc. v. John D. Brush & Co., Inc.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001).  A plaintiff must demonstrate (1) a likelihood of success on the merits, (2) a likelihood of irreparable harm that would result if an injunction were not issued, (3) the balance of equities tips in favor of the plaintiff, and (4) an injunction is in the public interest. *See Winter*, 129 S. Ct. at 376.  The irreparable injury must be both likely and immediate. *See id.* at 374-75; *Carribean Marine Services Co., Inc. v. Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988) ("a plaintiff must demonstrate immediate threatened injury as a prerequisite to preliminary injunctive relief").

Prior to *Winter*, the Ninth Circuit employed a "sliding scale" test that allowed a plaintiff to prove either "(1) a likelihood of success on the merits and the possibility of irreparable injury; or (2) [ ] serious questions going to the merits were raised and the balance of hardships tips sharply in its favor." *See Walczak v. EPL Prolong, Inc.*, 198 F.3d 725, 731 (9th Cir. 1999) (citation omitted).  In this continuum, "the greater the relative hardship to [a plaintiff], the less probability of success must be shown." *Id.*  Following *Winter*, the Ninth Circuit held that although the Supreme Court invalidated the sliding scale approach, the "serious questions" prong of the sliding scale survived so long as the plaintiff satisfied the other elements for preliminary relief. *Alliance for Wild Rockies v. Cottrell*, 622 F.3d 1045, 1053 (9th Cir. 2010).  Thus, a preliminary injunction may be appropriate when a plaintiff raises "serious questions going to the merits" of the case and the "balance of hardships tips sharply in the plaintiff's favor," provided that the other elements for relief are also satisfied. *Cottrell*, 622 F.3d at 1052-53.

## III.  DISCUSSION

**1. Likelihood Of Success On The Merits**

Significant discrepancies exist between the parties' proffered version of events regarding the propriety of Defendants' possession and sale of Kinkade art.  Both parties acknowledge that under the "beta test" agreement, Plaintiff gave Defendant permission to purchase and sell authorized Kinkade works.  Robert Murray Declaration, ECF No. 29 at 6, ¶ 12; Albert Scarlata Declaration, ECF No. 37 at 2-3, ¶ 5.  At some point in the spring or early summer of 2010, Plaintiff revoked that permission.  Murray Declaration, ECF No. 29 at 6-7, ¶¶ 14-15; Scarlata Declaration, ECF No. 37 at 3, ¶¶ 6-7.  What is unclear from the parties' declarations is whether Defendants have sold unauthorized versions of Plaintiff's products since the termination of the "beta test" agreement.

On the one hand, Plaintiff claims that Defendants continue to sell unauthorized derivative works of Plaintiff's product by (1) applying a gel coating to a paper print to make it look like a canvas print and (2) affixing postcards to cardboard and wrapping it in a protective sleeve to sell at art events.  Application for TRO, ECF No. 25 at 13-14.  On the other hand, Defendants claim that they began applying the gel coating and affixing the postcards to cardboard backings during the "beta test" agreement with the approval and encouragement of Plaintiff.  Scarlata Declaration, ECF No. 37 at 4-5, ¶¶ 9-11.  Since the agreement terminated, Defendants allege, Plaintiff offered to buy back their excess inventory of products purchased from Plaintiff during the "beta test" period.  *Id.* at 3-4, ¶ 8.  However, Plaintiff has not taken any actions to fulfill this offer and therefore, Defendants have continued to sell their lawfully-acquired inventory to independent sales representatives for resale at art shows.  *Id.*

These discrepancies are critical to resolving the merits of the case.  With such questions looming regarding fundamental aspects of the suit, Plaintiff has failed to show a likelihood of success on the merits.  As a result, at this juncture with the current factual record before it, the court will not grant the extraordinary remedy of a temporary restraining order.

**2. Immediate And Irreparable Harm**

Plaintiff must also demonstrate that it will likely suffer an immediate and irreparable harm without a temporary restraining order.  *See Winter*, 129 S. Ct. at 374-75; *Carribean Marine Services*,

844 F.2d at 674.  Plaintiff has failed to make this showing for three reasons.

**a. Defendants' Affiliation With The January 13 and 14, 2011 Art Shows**

First, Plaintiffs have not established that Defendants are sponsoring an art show on January 13 and 14, 2011 at which they will sell allegedly infringing products.   Plaintiff urges the court to infer from the declarations submitted in support of its application that Defendants will have an art show on those days.  Application for TRO, ECF No. 25 at 14.  Santoni states that on January 3, 2011, he called Debbie Vinson, who stated that "U.S. Art Events[']" next event was on January 13 and 14, 2011.  Santoni Declaration, ECF No. 30 at 2.  Similarly, Lenger states conclusorily that after attending a December 21, 2010 art show at which Plaintiff contends Defendants sold infringing products, he "learned that the next U.S. Wall Decor art sale event will be held on January 13 and 14, 2011 at Florida Palm Coast Hospital, just north of Daytona Beach, Florida."  Lenger Declaration, ECF No. 27 at 4-5, ¶ 13.  Plaintiff also produced photographs of art from the December 21, 2010 art show that had protective cardboard packaging bearing Defendants' logo.  *Id.*, ECF No. 27-2 at 5, Exhibit B.  In addition, Plaintiff submitted an invoice bearing Defendants' name and logo and Ms. Vinson's business card that contained Defendants' website, physical address, and the "Thomas Kinkade Events" logo.  Leslie Shimick Declaration, ECF No. 28-1 at 1 & 28-2 at 2.

These allegations are consistent with Defendants' version of facts.  Defendants contend that they sell authorized Kinkade works that they lawfully purchased from Plaintiff during the "beta test" agreement to third-party dealers who in turn sell them to the public.  Scarlata Declaration, ECF No. 37 at 2, ¶¶ 2-4.  Marcus and Debbie Vinson are third-party dealers who purchase Kinkade art from Defendants and sell it to the public at art shows.  Marcus Vinson Declaration, ECF No. 33 at 2, ¶¶ 3-4.  According to Defendants, the Vinsons own their own business called "Unlimited Edition," and they have never worked for Defendants.  *Id.* at 2, ¶ 2.  During the "beta test" agreement, Plaintiff supplied Defendants with or consented to Defendants using business cards, t-shirts for sales representatives, and Kinkade signs for their office building.  Scarlata Declaration, ECF No. 37 at 2-3, ¶ 5.  In turn, prior to the termination of the "beta test" agreement, Defendants gave the Vinsons business cards, invoices, and t-shirts to use at their art events.  Vinson Declaration, ECF No. 33 at 2, ¶ 5.  Over six months ago, Defendants instructed the Vinsons to stop using those items at their

**UNITED STATES DISTRICT COURT**
For the Northern District of California

shows but by accident, according to Defendants, the Vinsons continued to use them. *Id.* at 2-3, ¶¶ 6-7. Since that time, the Vinsons have destroyed those items. *Id.* Finally, Defendants are not sponsoring an art show on January 13 and 14, 2011 at which they will sell allegedly infringing products. Scarlata Declaration, ECF No. 37 at 2, ¶ 3.

The court finds that while an art event may occur on January 13 and 14, 2011, Plaintiff has failed to show that Defendants are affiliated with it or that issuing a temporary restraining order would have any effect on the sale of art at the January event. Therefore, Plaintiff has not established an immediate irreparable harm that can be avoided by a temporary restraining order.

### b. Plaintiff's Delay In Filing The TRO Application and Inadequate Notice

Second, Plaintiff cites two prior instances of alleged wrongdoing by Defendants, both committed by Ms. Vinson. In the summer of 2010, Ms. Vinson approached Jason Sarmiento, the Gallery Director of Patrick's Fine Art, an authorized Thomas Kinkade Signature Gallery, and offered to sell him Kinkade art at a significantly lower price than Plaintiff could offer. Jason Sarmiento Declaration, ECF No. 26 at 2, ¶¶ 2 & 4. On December 21, 2010, Plaintiff alleges that Defendants had an art event where they sold unauthorized versions of Kinkade art. Lenger Declaration, ECF No. 27 at 2-3, ¶ 4. When Santoni called Ms. Vinson on January 3, 2011 and asked her when the next art show would be, she indicated that "U.S. Art Events" would hold a show on January 13 and 14, 2011. Santoni Declaration, ECF No. 30 at 2, ¶ 2.

Even assuming that Defendants sponsored these art shows and sold unauthorized Kinkade art, Plaintiff knew of the alleged improper behavior at least by December 21, 2010, but waited to file an *ex parte* application for a temporary restraining order until January 11, 2011 at 4:41 p.m., noticing the matter for the next day at 10 a.m. What is more, Plaintiff knew the exact date of the event on January 3, 2011 but did not give notice to Defendants of its intent to apply for a temporary restraining order until it sent them an e-mail at 3:41 p.m. on January 11, 2011. Dana Levitt Declaration, ECF No. 31-6 at 1-2. That delayed notice not only prevented Defendants from providing an opposition (a situation mitigated slightly by the court's unavailability until 5 p.m. and Defendants' resulting ability to file two declarations), but also undercuts Plaintiff's claim of an immediate reparable harm because Plaintiff created the so-called emergency by its delay.

**c. Plaintiff Failed To Show That Money Damages Are Inadequate**

Third, Plaintiff has failed to demonstrate that money damages are inadequate. According to Plaintiff, it gave Defendants permission only to sell authorized work, but Defendants claim that Plaintiff approved the modifications (the gel coating and mounting post cards), and thus the work was authorized. *See* Murray Declaration, ECF No. 28 at 6-7; Scarlata Declaration, ECF No. 37 at 2-3. Also, according to Defendants, selling Kinkade art through art events allowed Plaintiff to sell excess product that it could not sell through brick-and-mortar galleries. Scarlata Declaration, ECF No. 34 at 2-3, ¶ 5. The disputed behavior by Defendants (selling modified Kinkade art work) also has persisted since the summer of 2010, before Plaintiff filed the initial complaint. Complaint, ECF No. 1; First Amended Complaint, ECF No. 32 at ¶ 14. All of this suggests a business dispute about the sale of excess (and lesser) product than the original art. Considering a continuum between "art" and "brand," the disputed sales here are about sales of modified products branded as Kinkade (as opposed to original art). On this record, the court cannot conclude that Plaintiff has established that the dilution of the brand in this context is not adequately compensable by money damages. *See* FAC, ECF No. 32 at 19, ¶ K (money damages). Where money damages are available, the harm is not ordinarily irreparable such that preliminary injunctive relief is appropriate. *See Los Angeles Memorial Coliseum Comm'n v. N.F.L.*, 634 F.2d 1197, 1202 (9th Cir. 1980) (citing *Sampson v. Murray*, 415 U.S. 61, 90 (1974)).

**3. Balancing Of Equities And The Public Interest**

Because Plaintiff failed to show that it is likely to prevail on the merits or that it likely will suffer an immediate irreparable injury absent a temporary restraining order, the court need not evaluate whether the balance of equities tips in Plaintiff's favor or whether a temporary restraining order is in the public interest.

**IV. CONCLUSION**

Plaintiff's application for a temporary restraining order is **DENIED**.

At oral argument, Plaintiff confirmed that the court should treat its application for a temporary restraining order as a motion for preliminary injunction. Accordingly, the court orders the following briefing schedule on Plaintiff's motion:

| | | |
|---|---|---|
| 1 | Defendants' Opposition: | January 20, 2011 |
| 2 | Plaintiff's Optional Reply: | January 27, 2011 |
| 3 | Hearing on Plaintiff's Motion: | February 10, 2011 at 10:00 a.m. |

The parties may modify these dates by stipulation if they determine that the additional discovery discussed at the January 12 hearing bears on the completeness of the record to be considered by the court.

**IT IS SO ORDERED.**

Dated: January 14, 2010

_____
LAUREL BEELER
United States Magistrate Judge